Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning. We're here to hear the case of William Greg Thomas v. Attorney General of the State of Florida. Mr. McClain, are you ready to Okay, very good. May I please the court? My name is Martin McClain. I'm representing William Greg Thomas in this appeal. I'm the CJA appointed counsel. This case is an unusual fact pattern in that there were two separate homicide prosecutions against Mr. Thomas that were brought and I just want to go through a little bit of a timeline because I think it's important to try to separate them out because at issue in this habeas petition is only the case involving the charge that Mr. Thomas murdered his ex-wife and it is not a challenge within this proceeding. I don't think it can be a challenge to the guilty plea as to the murder of his mother. He was adopted, his adopted mother and Rachel Thomas disappeared in September of 91 and for a year basically nothing, there was no charges filed, there was a police investigation. It's on the one-year anniversary a newspaper article appears that then leads to a testimony from a witness named Shroud and that is in September 12th is the one-year anniversary and that's when the newspaper article appears. After that, Shroud tells somebody about his concerns about being arrested. They go to the police and then the police contact Shroud. They actually have him Thomas and the story from Shroud doesn't result in any charges being filed nor do the transcripts of those taped conversations. It's in May of 1993 that Thomas calls the police to report that his mother has committed suicide by suicide. The prosecution decides, based on what the medical examiner says, to charge Mr. Thomas with the murder of his mother and at the same time they indict him for the murder of Rachel Thomas, the ex-wife. Both of the indictments are in May of 1993. The judge decides to have the Rachel ex-wife case go to trial first and then we'll try the other case. So there's going to be separate trials. In the Rachel Thomas case, there's the testimony of the three individuals, Shroud, Mr. Thomas's new wife, he remarried in December of 1992 and another person who had worked with Thomas at the Publix doing yard maintenance or lawn maintenance. Those three individuals testify actually, just also to make it clear, the testimony from both the new wife and the other individual from the yard, and I'm blanking right now a moment on the name, those two individuals were facing charges after Thomas was arrested in May of 1993 and ended up giving their statements to the police about statements Mr. Thomas had made to them when they were being threatened with criminal worker from the Publix maintenance crew, they're inconsistent with each other and they are, it's hard to regard them as credible because they each contain sort of outlandish claims. To the wife, he kidnapped the wife, and to the other worker at Publix, he claims that they killed the wife in front of him and bodyguards, it's just really strange stuff. And then in addition to those three individuals and their strange stories, then there's the jailhouse informant, Ahmaud Dixon, who shows up magically. So that's basically the case against Thomas, those witnesses, and the defense is that Thomas is a habitual liar, and that he, perhaps because he was adopted and whatnot, he felt this need to fabricate big stories that made him seem really important, and so it's sort of like this, as his new wife says, it's about having his real family be mobsters or in the mafia with a lot of power and a lot of connections, and it's unusual, it's an unusual case, but it's pretty clear that Mr. Thomas is a habitual liar and lies all the time. After the conviction is returned out to the wife, I believe the conviction is returned in 1994, the case involving the mother is set for trial in July of 94. And on July 14th of 94, and the jury had recommended death, the judge has not imposed death yet before the judge sentencing occurs, on July 14th of 1994, Mr. Thomas enters a trial, he's represented by Richard Nichols in both cases, and then the judge's sentencing happens one week later, on July 21st, and at the judge's sentencing, the state introduces the guilty plea as to the mother in order to aggravate and support a death sentence from the judge, and the judge relies upon it. Thereupon a direct appeal, Mr. Thomas argues that there's not a corpus delecti necessary for the introduction of the statements from the various individuals. That is one argument presented in the direct appeal, and the Florida Supreme Court rejects it, the corpus delecti claim on the merits, saying there was sufficient evidence, otherwise, besides the statements. Thereafter, post-conviction proceeds, and in Florida, 3851 is for capital proceedings, capital post-conviction motions, 3850 is for non-capital. So in this instance, well, let me back up, I forgot one important fact. In the guilty plea, in the mother's case, there's a waiver of any guilty issues in the capital case involving the wife. That is included. At the judge's sentencing, which is a week after the guilty plea, there's this long statement from Mr. Thomas explaining that he's innocent of both murders, and that he only pled guilty to the mother's murder because his lawyer convinced him to, as a way of avoiding the death penalty. But he insists that he's innocent of his mother's murder. So in post-conviction, collateral counsel is basically limited, well, the appointed collateral counsel under state law, is limited to a 3851 motion. If you were to challenge the non-capital case, you would file a 3850. In this case, a 3851 was filed by an attorney who had been appointed 60 days before he filed the motion, and in the motion, he indicated it was incomplete, he hadn't received a public record, etc. It's like 13 months after that is filed, he amends the 3850 to include the ineffective assistance that counsel claims. Specifically, he is arguing ineffectiveness in the capital case as to the guilty plea and its use in the capital case. Now, the state doesn't file any written response, and the judge concedes an evidentiary hearing, and as the hearing is starting, the state raises the argument for the first time that the waiver in the non-capital case guilty plea precluded any guilt-phase issues in the 3851. And I would note that there were guilt-phase issues raised in the direct appeal, which is inconsistent. There was no argument made by the state in the direct appeal that those issues had been waived. It ends up that the circuit court judge and the Florida Supreme Court conclude that the claim as to the ineffective assistance of counsel is procedurally barred for the failure to about the validity of the guilty plea. It was about the use of the guilty plea in the capital case and about counsel's ineffectiveness in the capital case in how he proceeded, one, to help the state create evidence against his client, and two, including in that this waiver. And I would make the point that to the extent that the Florida Supreme Court is relying on the waiver in the guilty plea case to preclude consideration of guilt-phase issues in the capital case, there was nothing to be raised by Mr. Thomas until the argument was made that the waiver precluded anything from being presented. So to the extent that both the Florida Supreme Court and the state now are contending that Mr. Thomas should have challenged that, the validity of that waiver, before the state had at any time asserted that the waiver was valid and precluded a claim, it doesn't make any sense. You can't... ...state trial court was that it was the state's use of that waiver that was a constitutional violation, not the ineffective assistance of counsel in negotiating it. Well, but the claim that was raised by Mr. Thomas' collateral counsel was that guilt-phase counsel in the capital case was ineffective. It wasn't...and then when the state argued that the waiver should be applied to preclude consideration of the ineffectiveness claim, that's when he said, well, then that would be unconstitutional, and it was attacking the validity of the procedural bar that was being invoked. So it's like the claim is ineffective assistance of counsel, and the rest is about whether or not that claim is procedurally barred, and you really can't argue that the procedural bar is invalid until there is the invocation of the procedural bar. At least, that's how it seems to me, so that what, in this case, I think has been confused repeatedly, and I think the district court made the same claim, and that being ineffectiveness in the capital case, and the claim of ineffectiveness in the guilty plea case, challenging the validity of the guilty plea. And that cannot be done in the 3851 filed in the capital case. You can't, I recognize, and you can't challenge the effectiveness of the guilty plea as to try to invalidate the guilty plea. You can't get relief as to the guilty plea by challenging the effectiveness of an attorney who pled him guilty in the capital case. They're separate, and what was being challenged in the 3851, and in the federal habeas that's pending before this court, is the conviction and sentence of death in the capital case. When the state tries to procedurally bar the guilt phase issues, and they only do that in the 3851, they don't do it on direct appeal when the guilt phase issues are first raised, that's a different issue, different landscape. That's not a claim, that is a response to the procedural bar argument being advanced by the state. So in addition, there are many ways to attack what the trial attorney did when the state tries to rely on the guilty plea after sentencing, and those were raised, or sought to be raised, in the 3850 before the state, at the commencement of the evidentiary hearing, first advanced their waiver argument. I also think it's important to note that, just for the record purposes, because I believe this court has ruled that I can only amend the habeas with the new information that I have discovered, the presentation of, in essence, perjured testimony, if this court, after this appeal, or when this appeal is concluding, remands to the district court. And what it is that I discovered, sort of by accident, as I was working on the case, that there were state charges against Ma Dixon pending when he first came forward, even though he testified he only had federal charges pending. And in addition, Adrian Kassan was a state agent at the time that Mr. Dixon is claiming that Mr. Thomas was talking with Kassan, and stopped talking when Dixon walked into the room, and then Kassan told him to continue talking. Even though Kassan was not called the witness at Mr. Thomas' trial, he had been listed as a potential witness, it is his actions that caused any statement to be made, and it was in violation of Mr. Thomas' Sixth Amendment rights. And I just ask the court to look at the motion I filed, because this is a case that is just, there's really nothing there when you break it down. I would like to reserve the rest of my time for rebuttal. Okay, you've reserved the rest of your time for rebuttal. Ms. Millsaps? May it please the court, this is Assistant Attorney General Charmaine Millsaps representing respondent. I would like to talk about the equitable polling issue. None of the claims are properly, none of the substantive claims are properly before the court because the habeas petition itself is untimely. The, first I'd like to sort of start at the end in this sense, about the effect of a ruling when an attorney misses the deadline on purpose as part of a litigation strategy, what's the effect? But let me ask you a question, counsel. Litigation strategy assumes that you have informed consent from your client, does it not? No, I don't think it does. It depends. Only certain things are usually related to trial, things like whether there's going to be a bench trial. The United States Supreme Court recently This is a case that involves a deadline, a filing deadline. And the question is, and I believe there's a stipulation and the district court found, made findings specifically, that Mr. Thomas was prejudiced and the attorney representing him acted in bad faith and abandoned the client by pursuing a litigation strategy that was solely for their purpose and not client's purpose. In fact, they had no conversation with the client regarding the litigation strategy. Is that correct or incorrect? That's what the district court found, I'm saying as a matter of law. Well, there's really no evidence to the contrary, is there? No, it's conclusions that I'm saying are incorrect. But there's evidence to support what the district court found. What evidence is there to support that this was for the client's benefit? The end result. We are here for over, there is no third person. That's not evidence of what the intent, what the purpose here was. I mean, that may, it may have, it may have delayed, the litigation of this case may have delayed any potential execution here but there is no way to know beforehand how that would work out. Very often when cases are dismissed as untimely, that's far faster than merits review. But your honor, she knew that she, she literally testified in her deposition that she did not believe that any of these claims, any of the exhaustive claims, remember we were before Martinez versus Ryan, so she was limited to the claims raised that were properly exhausted. There were about 11 of them and her testimony was there were no merits or disclaims. And this, so yes it is. You're going to cite the hearing transcript where she said that her client had no viable claims but what she actually said was there was nothing ready to be filed that had any kind of merit before the filing deadline. That's what she said. Well, and your honor, in the end these were all denied. Here's the problem with... That's a different issue though from whether the client here is entitled to equitable tolling. Whether or not this was a, there's no third party under agency. She has to be acting in some other, in her own interest or another party's interest. She's not acting, but the district court, the district court specifically found that this attorney acted in bad faith. And in fact, if you look at the Florida rules of professional conduct, frankly this is, that's the case where the bar can look at her actions because she acted in bad faith. So how, I don't understand why you're fighting, why you're fighting the hypo, which is the district court made a finding and you have no other evidence to suggest that she wasn't acting in bad faith. I agree she acted in bad faith against the court. She did not act in bad faith against her client. The bad faith... Ms. Millsaps, the state stipulated that she missed the deadline as part of a deliberate strategy to challenge the constitutionality of the statute of limitations, which she had a personal interest in invalidating. Wasn't there evidence also suggesting that she wanted to do this in order for her to get more cases? No, she, that's not, I mean, any attorney, that's way too nebulous. There is bad faith on Mary Kate Bonner's part, but it was toward the court, not her client. And this ended up being very to his benefit. He is literally... Ms. Millsaps, this is Judge Collins. What interest of her client at the time she deliberately missed the following deadline, what interest of her client was she promoting or advancing at that time? The delay that results from... How did she know and how could she predict and how did anybody know that it would be more delay to default and get thrown out of court on missing the statute of limitations than it would be on an adjudication of claim? Well, because, Your Honor, if you don't have any meritorious claims, and I take her, the only claims that could have been raised were the ones that were raised in the, that were exhausted. A lot, it is perfectly reasonable strategy to think I'll get further with throwing this like a branch. Did she testify or did y'all stipulate that her purpose in doing that was to delay? We did not stipulate as to delay, but that has always been my position, that that was... Ms. Millsaps, there's no fact find and no evidence to support that her subjective purpose and motivation was for delay. Is there? There's no... No, she did not testify to that. There's no evidence that that was her purpose. No, there's no... No, Your Honor, it's more as a matter of law, just like the Seventh Circuit has said. Delay is the name of the game on a capital case. So every time that an attorney deliberately misses the filing deadline, they have a valid purpose of delaying, at least a mixed motive purpose of delaying, that will insulate the running of the statute of limitations from equitable total. And, Your Honor, let me give you two cases that... No, no, no, no, no, no, no. I don't want two cases. I want an answer to my question. If you want us to find as a matter of law, then it's always best for the petitioner to miss the statute of limitations. No, Your Honor. If it keeps him alive longer, then tell me what's the evidentiary basis for your syllogism. What's the premise, the factual premise? Again, she did not testify that delay was her motive. I know, but you said it's more a matter of law, that delay always serves the petitioner, and that missing the statute of limitations is the way to get more delay as a matter of law. Is that not your position? Well, yes, Your Honor, and it doesn't always have to be... Okay. It doesn't have to be 100% right to have a trial litigation. So, anytime a lawyer misses the statute of limitations, there is no equitable, on purpose, there is no equitable tolling, because as a matter of law, that always benefits the petitioner. As a matter of law, it is a reasonable strategy because it could benefit the petitioner. Strategy implies that the attorney did it for that purpose. Yes, but it doesn't mean that they're 100% right all the time. Yeah, but there's no evidence that that was the purpose. You keep forgetting that fact that we just went over. But there's no evidence of that, and that's not part of the stipulation that the state entered into with this inmate. So, there's no... The fact finding that we have here by the district court is supported by the evidence, is supported by the stipulation, and you offered no evidence to support what you're saying now was the attorney's trial strategy or intent. Well, if it was intentional, and you know that she wanted to make a statutory argument, it's certainly reasonable to assume she had a reason for doing that, and I'm saying that reason is delay. So, we know that what the reason is because there was a stipulation, and she testified that her reason was she wanted to challenge the constitutionality of the provision, and that was her sole reason, which was a reason that, first of all, was never even discussed with her client, and in fact, she misled her client, and she misled the court. I mean, that's what the facts show. Am I incorrect in my reading of the record? No, she misled the court. You're not incorrect. She did mislead the court. Did she not also mislead the client? Did she not tell the client that she was filing something? Did the client not testify that, in fact, if he had known that the deadline was going to be missed, he would have filed his own habeas? He did testify to that, but, Your Honor, when she testified, she wrote a lot of letters to him, which, incidentally, at this evidentiary hearing, were only partially introduced, and in many of those letters, she refers to filing it later or giving it more time. So, it's perfect, and the other thing is he has to be diligent, and there were serious red flags. Even if you accept he did not know at the beginning, really, by April of 2003, he should have known. First, he gets a letter on March 19, 2003, saying, and I quote, they have a few weeks to timely file, which there was time left, but then he gets a- Mr. Millsfield, I thought the district court credited his statement, and his statement was he didn't find out that she hadn't filed until after the statute of limitations had run. Am I wrong about that? I did not get that. No, he said he found out at some time. That's what the district court's order said, and I'm saying the time- I thought, didn't he find out after the district court dismissed it, that's when he got the order, and he found out that, in fact, it was outside the time frame, and therefore, it was dismissed. Isn't that what the record shows us that's what he testified to? Well, first of all, he waited eight months after that, and secondly, I'm saying- Can you answer my question? Is that not what the evidence shows? That, yes, he filed a letter to the district court in 2007, which was eight months after the district court entered the original order dismissing the habeas petition as untimely, so eight months later, he writes a letter asking the district court where the pro se petition that he filed is, but I'm saying there were red flags from Bonner's letters to him years earlier. Okay, so, and then, Your Honor, even- I'm concerned about finding that an attorney intentionally misses the deadline could still be entitled to equitable tolling due to the statute of limitations. Now, the district court- Well, if you're concerned about that, maybe the next time you need to do a better job of developing some evidence about what the attorney's intent was, but I just don't see how, on this record, you're going to get anywhere with this equitable tolling argument. Well, Your Honor, the burden is on them, especially when equity- I know, but they've won. They've won on this issue in the district court. You're saying that the district court was wrong, and the district court made findings of fact. And I'm not disputing the findings of fact, Your Honor. What I'm disputing is the inclusions of law. But, Your Honor, even every one of the five claims that- even on the merits, Your Honor, these issues are- the district court found the first two procedurally barred, and the others were not contrary to or in a reasonable application of. So, Your Honor, my argument is really on the equitable tolling as a matter of law. I'm not disputing his facts. I'm saying they were- as to diligence, he was not diligent because they were red flags way before the district court's orders. And even then, he waited eight months. That's not diligent. And- Counsel, what's the reddest of the red flags? I've read that procedural chronology, and I don't- and I read his statement. I read the district court's crediting of his statements. What's the biggest thing that should have prompted him as a pro se incarcerated death row inmate to have taken control of things? Two letters from Bonner. One on March 19th where she says there's a few weeks to file, and then less than a month later, he said- she writes again and says the deadline has elapsed. So, within less than a month, first she says we have time, and then she says we don't have time, then she writes a third letter saying it was long gone. And all that happens in 2003, yet he does not write a letter to the district court until 2007, over four years later. That's not diligence either. But did not- I'm sorry. I'm sorry. Go ahead. No, you go ahead, Judge. But did he not, though, in response to that, did he not testify that he then was advised by his counsel not to worry about it, that it was a technical issue, and she would take care of it? He did testify that he thought it was a technical issue. But the other thing, Your Honor, when you're- No, no, no, no, no, no, no, counsel. He testified that she told him it was just a technical issue and they would take care of it. Absolutely. He testified that Bonner told him it was technical. Yes, that is the language used. And that she would take care of it. He testified to that, yes. So what exactly then is a pro se person supposed to do then? Not listen to the lawyer? Well, she's already just told you that your petition is untimely. And so I just don't understand why you couldn't write that letter earlier. And he never testified as to time frames about when she told him it was technical. And what's more, Your Honor, these letters that they introduced where they have the burden that they have an injury hearing. First of all, it was selective letters from the correspondence between them and they were redacted. Now, going back to Judge Pryor's question, you also have the ability to introduce evidence, correct? And you didn't do that. I can't get the letters. The attorney client privilege prevents me from- You had the ability to cross examine, correct? Did you not? Were you prohibited from doing that? Your Honor, actually, we're the ones who called Mary Kate Bonner to the stand, so it would be a direct exam, I'm sorry, rather than a- No, no, no. Okay, but he would be an adverse witness. I'm sorry, Judge Farns. Yeah, no, I was asking the same question just with two-letter words. Yeah, so I don't understand why you're your entire argument on this. You're not within a country mile of persuading, from what I hear, any of us- That's right. ... that your argument has no substance. Why don't you go to the merits if you have any argument on the merits? Yes, my argument on the merits of all the claims are that the three claims regarding the guilt and penalty phase, the last three claims, they're not contrary to or in a reasonable application of Strickler. I can talk to you about them individually. He really kept his argument more toward ineffectiveness of agreeing to a no appeal provision. What Nichols, trial counsel Nichols, did was the murder trial of his ex-wife had already been entered, and the jury had already recommended death by 11 to 1. They then took a break from that case for the sentencing of that case, and they dealt with the mother case, the mother murder. Defense counsel Nichols was agreeing to what even the prosecutor testified was an unusual provision of waiving all the guilt phase claims in the other case, in the wife case, inside the plea agreement to the mother case. Nichols testified, and everybody, the Florida Supreme Court testament, our state trial court found him to be more credible, um, Nichols, about what happened, and everybody, both the courts found that it was pretty much that it was reasonable to enter this in terms of, what he testified to Nichols at the state evidentiary hearing was, look, I was more concerned about having two. They were seeking death in the other case, where he murdered his mother, just like they had been with the wife. They agreed to a life sentence, which is always a good outcome for trial counsel, um, in addition, on the condition that he waived the guilt phase. Now, remember when Nichols enters that, he was counsel at the guilt phase of the wife murder, and that's already happened. So, it's not like he's entering a blind, uh, waiver. He knows if anything, I'm going to say overwhelmingly major happened at the guilt phase, where he thinks he could get a reversal on appeal, because that guilt phase has already happened. So, in effect, for giving up just really normal appellate issues, he is receiving a, um, a life sentence in a capital case, and, uh, remember, this jury recommended death by 11 to 1 without knowing that Thomas had also killed his mother. Uh, the, the, if we hadn't paneled the jury, uh, the jury, the penalty phase jury in the mother case would not only know about the what, the murder of the wife, but they would know that he murdered his own mother. So, uh, you know, I don't think the outcome would be more like 12-0 in the mother case. Um, so, uh, it, it's 11-1 thinking he murdered his ex-wife. It's the, it seems very likely that it would be 12-0 when the mother's theoretical penalty phase jury, because remember, he entered the guilty place, um, on the advice of counsel, and my point is that's perfectly reasonable, uh, that is not deficient performance, and I don't think there's any prejudice either on, uh, on that issue, um, because the, remember, you, getting it and using it as an aggravator, which they're sort of hinting is part of the prejudice. It's not, it's, we can use that as an aggravator, whether it arises of a guilty, uh, out of a guilty verdict or out of a plea. It's the conviction that matters. So, I don't think there's any prejudice on this either. They, they haven't, I don't see where they've argued what the real prejudice would be regarding entering the guilty place. Um, if you, if the, if any of the judges, now the, the district court entered a COA on five issues. He limited his, um, presentation to the appeal provision, and then the second part of it really has to do with a habeas petition, a successive habeas petition that he's filed, uh, that are, that are being stayed in the district court, successive petitions that are being stayed in the district court pending the outcome in this appeal. So, I don't think any of the, the newly discovered, the Brady or whatever you, that is all, that's not properly before this court. Those, that's being raised in separate petitions. But if you're, if your honors have any questions on the remaining, you know, failure to call Harry McMahon, uh, his divorce lawyer or any of the other claims, I'll be happy to answer them. But in light of the presentation being limited to that one issue and to an issue that is not properly before this court, um, the state rests on its brief. Okay. Um, Mr. McLean, I think you've got at least 10 minutes for rebuttal. Um, yes, your honor. Thank you. Um, um, as to the, uh, equitable tolling, I'm not going to say much. I just would make the point that, um, I think we're with you on that, Mr. McLean. Okay. Okay. Okay. I won't even bother with the point then. Um, as to, as to the claim, here's the big problem. The state court and the district court has, has followed it. Proceed. It said, Mr. Thomas couldn't present any guilt-based issues and they're all procedurally barred. The ineffective assistance of counsel claim as to the guilt phase has never been considered by a Maybe I just overlooked this, but in the mother murder case on the, um, the rule 11 or Florida's version of rule 11, I guess it also number 11. Wasn't there a plea colloquy in which this guilty plea was explained to the petitioner and didn't he, uh, state that he understood it and he agreed with it? There is a plea colloquy from July 14th. And then there's also what Mr. Thomas says at the sentencing on July 21st. And so, um, I make the point that a challenge to the guilty plea in the guilty plea case has not occurred. What has occurred is a challenge to the validity of the guilt phase issues in a separate criminal prosecution. I understand. But if the, if the petitioner agrees to that and is fully informed and makes a Johnson V Zerps type of voluntary and intentional waiver of that right, you're in a lot worse shape than if the attorney had just done it without fully informing the petitioner and without having the petitioner stand up in court and a plea colloquy and make solemn declarations to the court that he understood it. He agreed, he thought it was in his best interest and he wanted it. Except he really didn't because there is the colloquy that occurs on the 14th and there is the statement also on the 21st. And it's clear when you read them, he says he's not guilty. He didn't do it. And he's only pleading to avoid a death sentence in the other case. I understand. And that's a perfectly legitimate consideration. People do it literally all the time. And the Supreme Court has said, it's okay to do that. But I'm not challenging the guilty plea. Here's my point. Here's my point. If you don't challenge the guilty plea, then we have to take it as a knowing voluntary and waiver of his rights in the second case. Because that's what the guilty plea agreement was. And if he didn't voluntarily and intelligently and knowingly and thinking it's in his best interest, make that decision, then the way to attack that is attacking the guilty plea in the mother murder case. Not by saying, okay, you can't use it in the wife murder sentence stage because it was a result of not a voluntary and knowing waiver. You're left with the fact that defendants, as I understand the ranking of the premises in your defendant, should be allowed to waive that and negotiate with that in a capital case about another capital case. In other words, the law ought to prohibit this no matter how well informed, no matter how voluntary, and no matter how much it's in his interest. And I just don't see that you've got any basis for saying that we can't allow defendants to do this if they voluntarily want to do it and think it's in their best interest. Except the attorney misled him and he didn't know and his statements show he didn't know that the effect of this. He did not know the guilty plea could be used in the capital case. It's clear when you read it. He's not advised it will be used in the capital case. He thinks it won't be used in the capital case. And he's being represented by an attorney, the same attorney in both cases, and what he doesn't know is what he's waiving is being able to challenge Nichols' representation in the guilt case. Nichols gets this waiver that protects Nichols against his clients, and he doesn't know that. No one informs him of his giving up his right to claim that he's innocent of the murder of his wife, because he clearly would not have done that. He specifically says, I'm innocent of killing my wife, not knowing that he has agreed to give up any challenge to that conviction. You think the critical and decisive thing here is, and this is my term, conflict of interest of the lawyer negotiating his own performance from being scrutinized and advising his clients. That's the difference, right? Well, yes. And it's not just as to the ineffectiveness claim. The prosecution also had an interest, because they get him to waive any Brady violations, supposedly. Well, the prosecution has an interest counsel, and everybody pleads guilty. You can't invalidate a guilty plea because of that. But that's not the issue. The issue here is, as to the validity of waiving in a separate criminal prosecution, any challenge to the guilt, he's pleading in the- And what I'm asking you, and I'm trying to work down or up, whichever direction you want to view it as. What I'm asking you is, if a defendant is fully informed, here's what's going to happen. You're going to be waiving the right to attack the guilt verdict in that other case. And that means you can't do it. Otherwise, you could do it full throttle, everything we can imagine. But you're going to be giving that up. And in return, we're going to avoid the death penalty in this case. I'm not disputing that a fully informed defendant could do that. Thank you. That is helpful to me. What I am disputing is that that happened in this case, because it didn't. We have no fact-finding, you're telling me, as to whether or not the petitioner is telling the truth when he says he wasn't informed of that. What we have is the transcript reflecting his view. He never specifically says, I think I can challenge my guilt in that. But he's indicating he's innocent, and he to go about that. That's an Alford plea. I'm innocent. I had nothing to do with this. This is a terrible tragedy, but it's in my best interest. I'll do it. And the Alford plea is sort of more about the mother. Here is what he doesn't know about, clearly, is that this is, in essence, a guilty plea in the Rachel, the wife case. Because you're giving up any challenge to the conviction. It's not a guilty plea. He's been adjudicated guilty by a jury. Granted. But the waiver of any right to challenge the conviction is, I mean, you're right, it's not a plea. It's kind of an appeal waiver in another case for a second case. And we have appeal waivers all the time. And you could do that, but you have to know that that's what you're doing. And he did not know. He was waiving any right to challenge the guilt phase issues in the other case. Where was this claim presented? I don't see where there was ever a claim presented that that agreement was not knowing involuntary. Well, here's the thing. This claim keeps changing at every step of the way, it seems to me. Well, the reason it seems to change is because until the state invokes this waiver, it's not an issue in the Rachel case. It only becomes an issue in the Rachel case when the state says you're barred from presenting the guilt phase issues. And it's not really a claim as to something unconstitutional. It's a challenge to the use of the waiver to procedurally bar. When the state invokes procedural bar, you're telling us then if we look at the record, the proper record, it will show that you or his attorney at that time objected on the grounds that he wasn't fully and properly informed that that was what was going to be done with the waiver. Well, it's sort of complicated in the sense that the attorney representing him at the time first learns the state is arguing procedural bar at the evidentiary hearing, at the moment the evidentiary hearing begins. He's caught flat footed. He doesn't know this is coming. And you can read the transcript. And he's just like, he goes off about how long this is, and so he's been misled up to this point. He does challenge it. And as time goes on, and he's able to proceed, go ahead with the evidentiary hearing. But he is explaining in the course of it, that there are, you can't rely on this procedural bar. And they shouldn't be able to use that guilty plea to bar the issues in this case. And he enumerates various reasons. Or one of them was one of them that the petitioner wasn't informed and didn't voluntarily wait. I believe so. Right at the moment. I can't point to a particular page. Here's what I remember. Let me I can refresh your recollection. Let's let's assume you're right that that this be really argued until the state raised the waiver. In the brief to the state Supreme Court. What I understood your client to have argued was that it was somehow a violation of the Sixth should not enforce it. I don't think there was any argument about the attorney laboring under a conflict of interest that was somehow disloyal to the client, nor any argument that that the waiver wasn't knowing involuntary. Is that anywhere in the brief to the Supreme Court of Florida? Um, what I remember most clearly at the moment is the floor of Supreme Court saying that that argument had not been presented in the 3851 court. And I believe it was telling me what the Florida Supreme Court ruled. The brief argued to them. And I'm sorry, at the moment, I don't have a clear recollection of the brief itself enough to feel like I can give you. Okay, well, we'll take a look at it. But but the argument really, on some level is it doesn't matter because it isn't. It isn't a challenge to the guilty plea. It's a challenge to the procedural bar and the adequacy of the procedural bar that the floor Supreme Court employees to say that guilt phase ineffectiveness since the claim is barred and will not be considered on the merits. So the question now is the adequacy of that procedural bar. And, and that's, for me, and perhaps, perhaps I'm not helping. Was there a two minute warning? Pardon? Yeah, the courtroom deputy. I didn't hear. I didn't hear the minute warning. Was there one? Yes, Your Honor. Well, I didn't hear it. Okay. Mr. Klein, I think we understand your case. I know that you were court appointed. We appreciate you accepting the appointment and discharging your your responsibility. Honorably this morning, and we'll take the case under submission. Thank you. Thank you.